Filed 10/19/21  P. v. Ward CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDY LEE WARD,<br><br>    Defendant and Appellant. | F081906<br><br>(Super. Ct. No. BF174473A)<br><br><br>**OPINION** |

-ooOoo-

<u>**THE COURT**</u>\*

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Lindsey K. Terry, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Detjen, Acting P. J., Smith, J. and Snauffer, J.

Defendant Brandy Lee Ward stands convicted of possession of methamphetamine for sale.  On appeal, she contends her trial counsel was ineffective for eliciting harmful testimony at trial.  The People contend that defendant failed to prove that she suffered any prejudice.  We affirm.

## PROCEDURAL SUMMARY

On May 13, 2019, the Kern County District Attorney filed an information charging defendant with possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1).  The information further alleged that defendant had served five prior prison terms (Pen. Code, § 667.5, subd. (b)).[1]

On August 24, 2020, a jury found defendant guilty on count 1.

On September 30, 2020, the trial court sentenced defendant to a split sentence of three years (the upper term) pursuant to Penal Code section 1170, subdivision (h).  Specifically, the court ordered defendant to serve one year four months in county jail and one year eight months on mandatory supervision.

On October 8, 2020, defendant filed a notice of appeal.

## FACTUAL SUMMARY

**People's Case**

At about 2:30 p.m., on October 29, 2018, Kern County Sheriff's Deputies James Money, David Manriquez, and Dizander Guerrero, along with other deputies, arrived at a residence in Oildale to execute a search warrant.  Defendant's name was on mail in the mailbox and she was present in the residence.  Once the deputies entered defendant's residence, she led Manriquez to her purse where he discovered two "clear plastic baggie[s]," one containing 0.2 grams of methamphetamine and the other containing 24 grams of methamphetamine.  Manriquez and Guerrero believed the substance in the

---

[1]  The trial court struck the prior prison term enhancement allegations.

2.

baggies to be methamphetamine based on their observations, training, and experience. Defendant admitted that the methamphetamine belonged to her.

Manriquez had received training on identification of methamphetamine and he opined that one- or two-tenths of a gram of methamphetamine is a single use or dose for an average methamphetamine user. He further opined that "[a] typical user of methamphetamine uses about two or three times a day …." However, he acknowledged that a heavy user of methamphetamine could consume up to a gram per day. He therefore opined that a typical methamphetamine user could consume 24 grams of methamphetamine in 80 to 120 days, but a heavy methamphetamine user could consume 24 grams of methamphetamine in as few as 24 days. Methamphetamine can be smoked, snorted, injected, or dissolved in a liquid. Most commonly, it is smoked using a glass pipe. Neither Manriquez nor Guerrero found a pipe or syringe in defendant's residence when executing the warrant.

Methamphetamine usually costs $10 per half gram. A price reduction for methamphetamine was possible if purchasing in quantities at or above one-quarter of a pound. The 24 grams of methamphetamine therefore had a street value of approximately $480. Manriquez testified that methamphetamine users do not often stockpile methamphetamine for personal use because it was so widely available. Manriquez explained that people who purchase methamphetamine for personal use normally keep it in small quantities and purchase weekly.

During execution of the warrant, Manriquez also discovered a digital scale in defendant's purse and a pay-owe sheet.[2] He explained that people who sell methamphetamine generally use a digital scale to weigh the methamphetamine and keep a pay-owe sheet to account for the money owed by drug purchasers. Defendant did not

---

[2]    The record does not indicate from where in defendant's residence the pay-owe sheet was obtained.

3.

have clean, unused baggies that might suggest that she was selling methamphetamine. Nor did Manriquez discover any used baggies with residue that might indicate that she had been stockpiling methamphetamine for personal use.

In light of defendant's possession of 24 grams of methamphetamine, a scale, and a pay-owe sheet, Manriquez opined that defendant possessed the methamphetamine for sale.

On cross-examination, defense counsel asked if Manriquez had "observe[d] [defendant] ever engage in any sales of narcotics?" Manriquez answered that he had. He was then asked if he observed defendant sell narcotics on October 29, 2018. He answered that he had not. On redirect examination, the prosecutor asked Manriquez a question regarding his observation of defendant having sold methamphetamine. The trial court held a sidebar and the question was not answered.

**Defendant's Case**

Defendant testified that on October 29, 2018, just after she woke up, sheriff's deputies kicked in her door. She told the deputies where her methamphetamine was located because she "did[ not] want them to tear [her] house up" searching for it.

Defendant was a methamphetamine user, but she did not sell methamphetamine. She told Manriquez that the methamphetamine was for personal use. She rarely went a day without consuming methamphetamine. She testified that it took her about two weeks to consume one ounce of methamphetamine. She had less than an ounce of methamphetamine in her home on the date of the search. She usually bought methamphetamine by the ounce because it was "just cheaper to buy it that way." She possessed a scale because she "want[ed] to make sure [she got] what [she was] paying for." The item that Manriquez identified as a pay-owe sheet was actually a score card for an online game that she played with her friends. The figures on the sheet represented money her friends had in their accounts, but not from drug sales.

4.

Defendant acknowledged that she had been convicted of felony crimes of moral turpitude in the past.

## DISCUSSION

Defendant contends that her trial counsel provided ineffective assistance of counsel by asking Manriquez if he ever observed defendant sell narcotics. The People respond that, even assuming defense counsel's performance was deficient, defendant suffered no prejudice in light of the strength of the other evidence. We agree with the People.

### A. Additional Background

Defendant had previously been convicted of possession of methamphetamine for sale in 2000, 2002, 2008, and 2014. The trial court indicated that it would permit the prosecutor to impeach defendant using 2002, 2008, and 2014 convictions if she testified. However, it required the convictions to be sanitized and permitted the prosecutor only to ask if defendant had been convicted of "a felony crime of moral turpitude." The court cautioned, however, if defendant opened the door—for instance, by suggesting that she had never sold methamphetamine—it might permit the prosecutor to present evidence of her prior convictions for sale of methamphetamine.

At trial, on cross-examination of Manriquez, defendant's counsel asked a series of questions regarding the scale and pay-owe sheet found in defendant's residence. He then asked, "Did you observe [defendant] ever engage in any sales of narcotics?" Manriquez answered, "Yes." After a sidebar, defense counsel asked if Manriquez had observed defendant sell narcotics on October 29, 2018. He responded, "On that day, no."

On redirect examination of Manriquez, the prosecutor's first question was "Deputy Manriquez, just to be clear that when defense asked you if you saw the defendant engage in sales of methamphetamine, you said yes, right?" The trial court held a sidebar and the witness was not permitted to answer.

5.

On cross-examination of defendant, the prosecutor requested a sidebar at which he asked the court if he was permitted to ask the defendant about her 2014 conviction for possession of methamphetamine for sale to impeach her testimony that she was not selling methamphetamine on October 29, 2018. The trial court ruled that the evidence was inadmissible character evidence and unduly prejudicial pursuant to Evidence Code section 352. Later in the cross-examination, the prosecutor again requested a sidebar and confirmed that the trial court would not permit him to ask about her prior sales of methamphetamine. The court confirmed that no such questions were permitted.

During the prosecutor's rebuttal closing argument, he told the jury, "Deputy Manriquez saw the defendant sell meth at a prior occasion." Defense counsel objected, arguing that the trial court had prohibited evidence regarding defendant's prior convictions for possession of methamphetamine for sale. The trial court responded that the prosecutor was "talking about the testimony where [Manriquez] said presumably on a prior occasion he had seen [defendant] sell meth." The trial court therefore overruled the objection because Manriquez's statement was admitted into evidence. The prosecutor then immediately repeated that Manriquez had seen defendant sell methamphetamine on a prior occasion.

## B. Analysis

To establish ineffective assistance of counsel defendant must show (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be

rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.]' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) To establish prejudice, defendant must make a showing "sufficient to undermine confidence in the outcome" that but for counsel's errors there is a reasonable probability that the result of the proceeding would have been different. (*Strickland*, at p. 694; *Ledesma*, at pp. 217–218.) We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. … If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." (*Strickland*, at p. 697.)

Here, there is no reasonable probability that the outcome would have been different had defense counsel not elicited the testimony that Manriquez had seen defendant sell narcotics on a prior occasion. Aside from Manriquez's statement that he had seen defendant sell narcotics on a date other than October 29, 2018, evidence was admitted that defendant possessed 24 grams of methamphetamine—which would take a typical user of methamphetamine at least 80 days to consume; a digital scale; and what appeared to be a pay-owe sheet, all of which suggested that defendant possessed the methamphetamine for sale. Defendant's explanations that she weighed the methamphetamine when she purchased it and that the apparent pay-owe sheet was actually a record of online gaming were not credible, especially in light of her prior convictions for crimes of moral turpitude, her lack of a detailed explanation for how the apparent pay-owe sheet was used, and the fact that the scale was found in the same purse as the methamphetamine. Manriquez and Guerrero also both testified that no pipes, syringes, or other indicia of methamphetamine use were found in the search of defendant's residence, tending to indicate that defendant's possession was not for personal use. The evidence before the jury did not, as defendant contends, present a close case. Although the evidence of defendant's intent to sell methamphetamine was

7.

circumstantial, it overwhelmingly led to the conclusion that defendant possessed the methamphetamine for the purpose of sales.

Defendant therefore suffered no prejudice from her counsel eliciting testimony that she had sold methamphetamine on a prior occasion.

## **DISPOSITION**

The judgment is affirmed.